### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### HARRISON DIVISION

**MICHELLE "MISSY" BABIN,**
**Special Administratrix of the**
**Estate of Larry Charles Babin, Jr., deceased**                    **PLAINTIFF**

**v.**                    **CASE NO. 3:24-cv-03057-TLB**

**JOHN MONTGOMERY, Baxter County Sheriff;**
**SEBASTIAN DENNIS, Lieutenant, Baxter County**
**Detention Center Facility Supervisor and Chief Jail**
**Administrator; TABITHA MAZE, Lieutenant, Baxter**
**County Detention Center Jail Administrator;**
**BAXTER COUNTY, ARKANSAS; AMELIA GAGNE,**
**Baxter County Detention Center Jailer; SERGEANT**
**BLAKE DUE; GARRETT BURNS, Baxter County**
**Detention Center Jailer; KOBY JOE WOOLEDGE, Baxter**
**County Detention Center Jailer; ASPEN SPECIALTY**
**INSURANCE COMPANY; ASPEN INSURANCE U.S.**
**SERVICES, INC.; ASPEN AMERICAN INSURANCE**
**COMPANY; BOSTON MOUNTAIN RURAL HEALTH**
**CENTER, INC.; JENNIFER DEDEK, LPN; DENISE**
**CLIFTON-JONES, APRN; SIERRA HOLLIS, LPN;**
**SHERRY HILTON, LPN; SAMUEL SPARKS, LPN;**
**JENNIFER ZAPPA, LPN, RN; JEFFERY TATE, PA-C;**
**JOHN DOES 1-10, Employees, Supervisors and Jailers**
**of the Baxter County Detention Center; JOHN DOE**
**INSURANCE COMPANIES 11-15; and JOHN DOES 16-20,**
**Medical Care Providers of the Baxter County**
**Detention Center**                    **DEFENDANTS**

### COMPLAINT
### *(With John Doe Affidavit Attached)*

Comes the Plaintiff, by and through her attorneys, James & Carter, PLC, and

for her Complaint against the Defendants, hereby states:

1.      This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and 42 U.S.C. § 1997(a) to redress the deprivation of past and present violations of the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States and for damages  pursuant to Ark. Code Ann. § 16-123-101; Ark. Code Ann. § 16-62-101; Ark. Code Ann. § 16-62-102; and, Ark. Code Ann. § 16-114-201.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367(a). This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because the claims form part of the same case or controversy as the 42 U.S.C. § 1983 claim.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) as the acts complained of all occurred in Baxter County, Arkansas, such county being situated in the Western District of Arkansas.

## PARTIES

4.      The Decedent, Larry Charles Babin, Jr. (hereinafter "Babin") died on January 6, 2024, at the age of 51, in Mountain Home, Baxter County, Arkansas. On the day of his death, Babin was domiciled in Cotter, Baxter County, Arkansas.

5.      Plaintiff is the Special Administratrix of the Estate of Larry Charles Babin, Jr., deceased. Letters of Administration were granted to her by the Probate

Court in Baxter County, Arkansas on or about November 12, 2024. A copy of the Probate Order is designated as **Exhibit A**, attached hereto and made a part hereof. She sues as the Special Administratrix of the Estate and on behalf of the statutory beneficiaries.

6.    Defendant John Montgomery (hereinafter "Montgomery") is and was the Sheriff of Baxter County, and in that capacity, and pursuant to Ark. Code Ann. §§ 12-41-502, 12-41-503, 12-41-507 and Ark. Code Ann. § 12-26-101 *et seq*., is and was responsible for establishing or failing to establish the policies, practices, and regulations for the conduct of the Baxter County Sheriff's Office and its employees. Montgomery is and was responsible for the hiring, training, supervision, discipline, and control of all members of the Baxter County Sheriff's Office. Montgomery is and was the commanding officer of the other police personnel named herein as individual defendants. Montgomery is and was constitutionally and statutorily responsible also for the operation, practices, and totality of conditions of the Baxter County Detention Center (hereinafter "BCDC"). Montgomery, at all times herein, was acting in such capacity as the agent, servant, and employee of Baxter County. He is sued individually and in his official capacity.

7.    Montgomery has constitutional and statutory responsibility for the conditions and practices of BCDC, and Montgomery is responsible for maintaining BCDC in conformity with constitutional requisites. Montgomery is also the custodian of BCDC, by virtue of Ark. Code Ann. §§ 12-41-502, 12-41-503, 12-41-507 and Ark. Code Ann. § 12-26-101 et seq., responsible for the neglect and omission of

3

the duties of all deputy sheriffs and jailers and charged with furnishing medical aid for all persons detained in BCDC, and assuring the reasonable safety of the inmates. In addition, Montgomery is and was responsible for ensuring that the Baxter County Sheriff's Office personnel obeyed regulations of the Baxter County Sheriff's Office, and the laws, minimum jail standards and Constitution of the State of Arkansas and the United States. Montgomery is and was responsible also for the establishment of policies, procedures, and guidelines for the arrest, jailing, and safekeeping of detainees housed in BCDC.

8.      Defendant Lieutenant Sebastian Dennis (hereinafter "Dennis") is the Facility Supervisor of the Baxter County Sheriff's Office and former Chief Jail Administrator, and in that capacity and pursuant to Ark. Code Ann. §§ 12-41-502, 12-41-503, 12-41-507 and Ark. Code Ann. § 12-26-101 et seq., was constitutionally and statutorily responsible also for the training, supervision, discipline, and control of all Deputy Jailers, as well as the operation, practices, and totality of conditions of BCDC. Dennis also had statutory responsibility for ensuring that BCDC conforms to the requirements of Arkansas law, minimum jail standards, and the laws and Constitution of the United States. In addition, Dennis was responsible for the establishment of policies, procedures, and guidelines for the arrest, jailing, and safekeeping of detainees housed in BCDC. Dennis, at all times herein, was acting in such capacity as an agent, servant and employee of Baxter County. He is sued individually and in his official capacity.

9.     Defendant Lieutenant Tabitha Maze (hereinafter "Maze") is and was the Jail Administrator of the Baxter County Sheriff's Office, and in that capacity and pursuant to Ark. Code Ann. §§ 12-41-502, 12-41-503, 12-41-507 and Ark. Code Ann. § 12-26-101 et seq., is and was constitutionally and statutorily responsible also for the training, supervision, discipline, and control of all Deputy Jailers, as well as the operation, practices, and totality of conditions of BCDC. Maze also has statutory responsibility for ensuring that BCDC conforms to the requirements of Arkansas law, minimum jail standards, and the laws and Constitution of the United States. In addition, Maze is and was responsible for the establishment of policies, procedures, and guidelines for the arrest, jailing, and safekeeping of detainees housed in BCDC. Maze, at all times herein, was acting in such capacity as an agent, servant and employee of Baxter County. She is sued individually and in her official capacity.

10.     Defendant Jailer Amelia Gagne (hereinafter "Jailer Gagne") is and was a jailer with the Baxter County Sheriff's Office. Jailer Gagne, at all times herein, was acting in such capacity as an agent, servant and employee of Baxter County. She is sued individually and in her official capacity.

11.     Defendant Sergeant Blake Due (hereinafter "Sgt. Due) is and was a Sergeant with the Baxter County Sheriff's Office. Sgt. Due, at all times herein, was acting in such capacity as an agent, servant and employee of Baxter County. He is sued individually and in his official capacity.

12.    Defendant Jailer Garrett Burns ("Jailer Burns") is and was a jailer with the Baxter County Sheriff's Office. Jailer Burns, at all times herein, was acting in such capacity as an agent, servant and employee of Baxter County. He is sued individually and in his official capacity.

13.    Defendant Jailer Koby Joe Wooledge (hereinafter "Jailer Wooledge") is and was a jailer with the Baxter County Sheriff's Office. Jailer Wooledge, at all times herein, was acting in such capacity as an agent, servant and employee of Baxter County. He is sued individually and in his official capacity.

14.    Defendants John Does 1-10 are the Baxter County Sheriff's Office supervisors and the jailers on duty between December 30, 2023 through January 6, 2024, whose names are unknown and who had the authority and responsibility for the inmates' safety, and at all times herein were acting in such capacity as the agents, servants, and employees of Baxter County. John Does 1-10 will be identified upon the taking of discovery by Plaintiff. They are sued individually and in their official capacities. Defendants Montgomery, Dennis, Maze, Jailer Gagne, Sgt. Due, Jailer Burns, Jailer Wooledge and John Does 1-10 are referred to collectively herein as the "BCDC Defendants."

15.    Defendant Baxter County, Arkansas (hereinafter "Baxter County") is a county located in the north central part of the State of Arkansas.

16.    Defendants Aspen Specialty Insurance Company, Aspen Insurance U.S. Services, Inc., Aspen American Insurance; and, John Doe Insurance Companies 11-15, whose names are unknown; are foreign or domestic corporations

licensed to sell insurance in the State of Arkansas that are the liability insurance carriers for Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office their agents and employees, Jennifer Dedek, LPN, Denise Clifton-Jones, APRN, Sierra Hollis, LPN, Sherry Hilton, LPN, Jennifer Zappa, LPN, RN, Samuel Sparks, LPN, Jeffrey Tate, PA-C and John Doe Insurance Companies 11-15 will be identified upon the taking of discovery by Plaintiff. The named and unnamed insurance companies are sued pursuant to the Arkansas Direct Action Statute, Ark. Code Ann. § 23-79-210 and pursuant to Ark. Code Ann. § 20-46-301 and are referred to collectively herein as the "Defendant Insurance Companies."

17.    Defendant Boston Mountain Rural Health Center, Inc. (hereinafter "BMRHC") is an Arkansas non-profit corporation and a Federally Qualified Health Center ("FQHC") doing business as a family community health center in Baxter County, Arkansas pursuant to Ark. Code Ann. § 20-46-301. At all relevant times herein, BMRHC was contracted to provide primary healthcare services to the inmates and employees of BCDC.

18.    Defendant Jennifer Dedek (hereinafter "Dedek") was at all times pertinent to this litigation acting in her individual capacity as a Licensed Practical Nurse ("LPN") and/or an employee and agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office.

19.     Defendant Denise Clifton-Jones (hereinafter "Jones") was at all times pertinent to this litigation acting in her individual capacity as an Advanced Practice Registered Nurse ("APRN") and/or an employee and agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office.

20.     Defendant Sierra Hollis (hereinafter "Hollis") was at all times pertinent to this litigation acting in her individual capacity as a Licensed Practical Nurse ("LPN") and/or an employee and agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office.

21.     Defendant Sherry Hilton (hereinafter "Hilton") was at all times pertinent to this litigation acting in her individual capacity as a Licensed Practical Nurse ("LPN") and/or an employee and agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office.

22.     Defendant Samuel Sparks (hereinafter "Sparks") was at all times pertinent to this litigation acting in his individual capacity as a Licensed Practical Nurse ("LPN") and/or an employee and agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office.

23.     Defendant Jennifer Zappa (hereinafter "Zappa") was at all times pertinent to this litigation acting in her individual capacity as a Licensed Practical

Nurse ("LPN"), as a Registered Nurse ("RN") and/or an employee and agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office.

24.     Defendant Jeffery Tate, PA-C (hereinafter "Tate") was at all times pertinent to this litigation acting in his individual capacity as a Physician's Assistant - Certified ("PA-C") and/or an employee and agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office.

25.     John Does 16-20 are medical care providers, agents and/or employees of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office whose names are unknown and who were responsible for formulating and implementing policy, practice and procedure for medical care at BCDC and who, in addition to  Boston Mountain Rural Health Center, Inc., Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate, provided or should have provided medical care to Babin. John Does 16-20 will be identified upon the taking of discovery by Plaintiff. Defendants Boston Mountain Rural Health Center, Inc.; Dedek, individually and/or as an employee and agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office; Jones, individually and/or as an employee and agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office; Hollis, individually and/or as an agent of Baxter

County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office; Hilton, individually and/or as an employee and agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office; Sparks, individually and/or as an agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office; Zappa, individually and/or as an agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office; Tate, individually and/or as an agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office; and John Does 16-20, individually and/or as an agent of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office, are referred to collectively herein as the "Medical Care Defendants."

## FACTUAL ALLEGATIONS

26.     On December 30, 2023, at approximately 8:47 p.m., Babin was arrested and charged with speeding, careless and prohibited driving, driving while intoxicated – DWI 2nd, and driving on a suspended license.

27.     Babin was transported to the BCDC, and at approximately 10:10 p.m. on December 30, 2023, he was booked into the BCDC.

28.     In the booking process by Jailer Wooledge, and during the medical screening process, Babin told Jailer Wooledge that he was on several prescribed medications.

29.     The BCDC did not perform an adequate medical screening on Babin and booked him into the detention facility, despite his known medical condition. BCDC also refused to provide treatment to Babin or provide his prescribed medication for his serious medical need.

30.     Babin was assigned to the F pod in general population prior to a medical screening conducted by a medical professional.

31.     On January 3, 2024, a layperson inmate who shared the F pod with Babin recognized that Babin was undergoing withdrawal and serious medical issues. He began to complain about Babin's strange and erratic behavior, stating that Babin was hallucinating and talking about things that didn't exist. The inmate reported this to Jailer Gagne, Sgt. Due and Jailer Burns and that Babin had asked for and had not received his medications and was suffering from alcohol withdrawal. Jailer Gagne observed Babin to be soaking wet, very confused and try to get into the shower to get a drink of water.

32.     Requests via phone calls and in-person attempts by friends to provide Babin with his medications were repeatedly ignored and refused.

33.     Other inmates housed in the F pod requested that Babin be moved out of the unit because he was going through alcohol withdrawal, was confused and disoriented, and was not receiving his prescription medications.

34.    On January 3, 2024, Sgt. Due and Jailer Burns removed Babin from the F pod to be placed in G11, a single cell. Confused and disoriented, Babin refused to enter G11. Sgt. Due then excessively and forcefully shoved Babin into the cell, causing him to fly several feet into the cell and land on his head, which began to bleed. Babin, still disoriented, made his way toward the cell door. Sgt. Due again excessively and forcefully pushed Babin, causing him to fall backwards, hitting the cell wall and metal bed frame.

35.    On January 3, 2024, Baxter Regional Medical Center ("BRMC") was contacted. When the EMTs from BRMC arrived, the unmedicated and untreated Babin was suffering the effects of alcohol withdrawal and was still confused, disoriented and combative. The BRMC EMTs were unable to transport Babin. Because they were unable to transport Babin, the medical professionals repeatedly and specifically instructed Sgt. Due and Jailer Burns to transport Babin to BRMC for treatment. This known and serious medical condition was ignored.

36.    On January 3, 2024, after the events that occurred during the transfer of Babin to G11, Babin was then placed in a detox cell. This transfer was for the known effects of alcohol withdrawal that Mr. Babin was experiencing and for closer observation. There was no written detoxification protocol by BCDC medical staff.

37.    At some point between January 3, 2024 and January 5, 2024, Babin was removed from the detox cell and returned to G11. Between January 3, 2024 and January 6, 2024, Babin's serious medical needs continued to be ignored.

38.    Between January 3, 2024, and the morning of January 6, 2024, the only in-person interaction BCDC employees had with Babin was to provide him with a bowl of oatmeal for breakfast on the morning of January 5, 2024.

39.    During this period of time, the unmedicated and medically ignored Babin was convulsing and vomited a bloody substance without detection by BCDC employees and he laid in the same position, unresponsive, except for very slight and lethargic movements of his feet. He was not provided with his medications and was not hydrated.

40.    On January 6, 2024, at approximately 6:30 a.m., Babin was found unresponsive in his cell. Babin was transported via EMS ambulance to BRMC.

41.    Upon statements by both BCDC employees and other inmates, the intoxicated Babin exhibited normal behavior at the time of booking on December 30, 2023, and shortly thereafter. However, shortly prior to January 3, 2024, after the cessation of alcohol and abrupt cessation of medications, Babin's behavior began to quickly deteriorate, becoming very strange and erratic.

42.    Babin was not provided with any of his medication from the time of booking through the time he was found unresponsive and transported to BRMC.

43.    Babin had a known issue with alcohol abuse. Additionally, Sgt. Due told other inmates that Babin was "detoxing."

44.    BCDC ignored the Arkansas Minimum Jail Standards and all proper protocol regarding the care of an inmate suffering from alcohol withdrawal symptoms.

45.     On January 6, 2024, at approximately 6:30 a.m., Babin was found unresponsive lying on the floor in his cell. He had not been treated for his known health issues, including his alcohol withdrawal syndrome.

46.     BRMC EMTs, Allyson Meadows and Isabella Hughes, arrived at the BCDC at approximately 6:57 a.m. and transported the unresponsive Babin to BRMC where he admitted at approximately 7:25 a.m.

47.     On January 6, 2024, at approximately 8:01 a.m., Babin died from the injuries he sustained as a result of the untreated symptoms of alcohol and withdrawal and delirium tremens experienced.

48.     Substance Abuse Disorder ("SUD") withdrawal is a serious medical need, as defined by *Diagnostic and Statistical Manual for Mental Disorders,* 5th Edition (DSM - V). It is recognized as a life-threatening condition if left untreated.[1]

49.     As set forth by a 2014 Bureau of Prison study on detoxification, alcohol withdrawal is known to be a condition that can be fatal for pretrial detainees.[2]

50.     Alcohol and Substance Abuse Disorder withdrawal were known by Defendants on December 30, 2023, to be conditions that could be fatal to pretrial detainees.

51.     Establishing protocol, training and policy for the daily intake of pretrial detainees suffering from withdrawal syndrome is the obvious clearly prevailing constitutional standard in corrections.

---

[1] https://www.bop.gov/resources/pdfs/detoxification.pdf, *Id.* at p. 22
[2] https://www.bop.gov/resources/pdfs/detoxification.pdf, *Id.* at p. 22

52.    The BCDC routinely receives pretrial detainees suffering from alcohol withdrawal and had no training, policy, practice or procedure to address this obvious and serious medical need.

53.    The BCDC encounters pretrial detainees suffering from withdrawal syndrome on a regular basis. Based on the correctional and medical data referenced above, it is an obvious, ongoing, and serious medical need that can result in injury or death and must be addressed by both training and policy. The failure to implement this policy and training directly resulted in deliberate indifference to Babin's serious medical need and ultimately, his death.

54.    In addition, based upon the family collateral source information from family members and friends who contacted the BCDC, Babin was known to have been medically treated for alcohol abuse prior to his incarceration.

55.    From December 30, 2023, until his death, Babin's conditions and serious medical needs were ignored.

56.    Withdrawal syndrome in jails has been widely studied and it is a known danger. *Detoxification and Substance Abuse Treatment. A Treatment Improvement Protocol TIP 45.* Substance Abuse and Mental Health Services Administration (SAMHSA) at Chapter 4, pp. 74-78. A medical article from the Yale Journal of Biology and Medicine set forth the signs and symptoms associated with "abrupt reduction or cessation of sedative use," including "tremor, anxiety, agitation, hyperreflexia, autonomic hyperactivity (e.g., elevated heart rate, blood pressure, temperature, and sweating), hallucinations, and seizures." Weaver,

Michael F. *"Prescription Sedative Misuse and Abuse."* The Yale Journal of Biology and Medicine 88.3 (2015); 247-256. Cited in: PubMed; PMCID: PMC4553644.

57.    Sheriff Montgomery knew of the foregoing deprivations and also affirmatively ratified the deprivations.

58.    Defendants Montgomery, Dennis, Maze, Jailer Gagne, Sgt. Due, Jailer Burns, Jailer Wooledge, Baxter County, Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate were aware on December 30, 2023, of allegations of an obviously inadequate or non-effective policy regarding pretrial detainees housed in the BCDC experiencing withdrawal syndrome. Babin was booked into the BCDC on December 30, 2023, evaluated and housed without hydration, in an unobserved cell without medical attention.

## FIRST CLAIM FOR RELIEF

### CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. § 1983 and 42 U.S.C. § 1988

59.    Plaintiff adopts and realleges each and every allegation contained in the preceding paragraphs, as if fully stated herein word-for-word.

60.    The Defendants, individually and in concert, had knowledge of the following:

    (a)    Babin was a pretrial misdemeanant who was arrested for a repeated alcohol-related offense. He was not adequately medically screened during the booking process.

    (b)    Jailer Gagne, Sgt. Due, Jailer Burns, Jailer Wooledge, Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate deliberately ignored Babin's serious medical need by not filling his medical prescriptions and refusing to accept the medication from his collateral sources.

16

(c)     Babin was housed in general population with no regard to his serious medical needs.

(d)     On January 3, 2024, Jailer Gagne, Sgt. Due and Jailer Burns had actual knowledge that Babin was experiencing alcohol withdrawal, was confused, disoriented, hallucinating, was soaking wet and had abruptly ceased his medication.

(e)     Sgt. Due and Jailer Burns used excessive force in moving Babin to a detoxification cell, resulting in serious physical injury to Babin.

(f)     Babin was examined by BRMC at BCDC on January 3, 2024, for erratic behavior. The BRMC Ambulance EMTs, Dee Allen and Erica Liggett, instructed Sgt. Due and Jailer Burns to transport Babin to BRMC. Sgt. Due and Jailer Burns ignored this serious medical need.

(g)     Jailer Gagne, Sgt. Due, Jailer Burns, Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate ignored Babin's serious medical need from January 3, 2024 through his death on January 6, 2024.

(h)     From December 30, 2023 through January 6, 2024, the Medical Care Defendants did not prescribe any medication or an alternative to medicate Babin for alcohol withdrawal.

(i)     From January 3, 2024 through January 6, 2024, Babin was housed in a cell without access to water and not capable of observation due to a lack of funding for adequate staff, instead of in a designated special housing cell which was capable of observation.

(j)     Defendants Montgomery, Baxter County and the Medical Care Defendants had no trained medical personnel on staff to evaluate, treat and/or monitor the condition of its mentally ill, disturbed or detoxification-stricken detainees and a nonexistent or ineffective policy for dealing with medical/psychiatric type detainees including detainees suffering from alcohol withdrawal and delirium tremens. Defendants Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate did not refer Babin to a physician or mental health professional.

(k)    The policy, practice and procedure for the detoxification process for detainees housed in the BCDC was nonexistent or ineffective, and not written by a duly qualified physician or other authorized medical professional. Defendants Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate were required to establish these policies, practices and procedures. Defendants Montgomery, Dennis, and Maze were charged with overseeing policy and establishing practices to comply with the policy.

(l)    Defendants knew of the substantial risk to the health and safety of Babin and consciously disregarded the risks and warnings given to Defendants.

(m)    Defendants Montgomery, Dennis, Maze, Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate did not adopt or implement medical health policies, procedures and training that met applicable medical standards in correctional health.

(n)    Defendants Montgomery, Dennis and Maze did not maintain proper medical records, and/or custody records sufficient to provide medical and/or corrections personnel with complete information regarding an inmate's medical condition, so that informed decisions could be made regarding continuing care and custody.

(o)    Defendants Montgomery, Dennis, Maze, Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate did not have a medical watch protocol in place for Babin.

(p)    Defendants Montgomery, Dennis, Maze, Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate did not provide training to agents and employees working at BCDC regarding any medical watch protocol.

(q)    Defendants Montgomery, Dennis, Maze, Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate did not establish an alcohol withdrawal protocol.

(r)    Defendants Montgomery, Dennis, Maze, Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate did not provide training to agents and employees working at BCDC regarding any alcohol withdrawal protocol.

(s)     During the relevant period of time, BCDC did not have an alcohol withdrawal protocol.

(t)     On or before December 30, 2023, Montgomery, Dennis, Maze, Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate did not provide training to agents and employees working at BCDC regarding any alcohol withdrawal protocol.

(u)     Defendants Montgomery, Dennis, Maze, Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate failed to establish an alcohol withdrawal protocol in a pattern of indifference to Babin's serious medical need.

(v)     Defendants Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate failed to treat Babin's obvious known serious medical need.

(w)     Defendants Sgt. Due, Jailer Wooledge and Dedek did not provide known medical information to the BCDC medical staff regarding Babin's serious medical needs.

(x)     Defendants Montgomery, Dennis, Maze, Dedek, Jones, Hollis, Hilton, Sparks, Zappa and Tate failed to adequately and properly train and educate BCDC employees, agents and contractors with respect to the proper evaluation of inmates suffering from alcohol withdrawal syndrome, which requires medical stabilization before incarceration, monitoring persons with obvious medical needs, transporting persons with obvious medical needs and handling persons suffering from alcohol withdrawal, with deliberate indifference and reckless disregard to the welfare of the BCDC inmates, including Babin.

(y)     Defendants ignored the Arkansas Minimum Jail Standards regarding the needs of inmates, a designated alcohol unit and detoxification, including, but not limited to having an authorized medical professional establish a written detoxification plan for Babin.

(z)     BCDC was not being operated in compliance with the statutory minimum standards promulgated pursuant Ark. Code Ann. § 12-26-101, et seq.; and pursuant to Ark. Code Ann. §§ 12-41-501, 12-41-503 and 12-41-507, and violated its statutory duty to Babine to make BCDC a reasonably safe place of confinement.

61.     The foregoing acts and omissions by Defendants constitute a due process deprivation as a non-convicted pretrial detainee and a direct deliberate indifference to Babin's safety and serious medical needs in violation of his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

62.     Babin's death was also the result of Defendants' indifference to his safety and obvious serious medical needs, based upon their individual and/or supervisory customs, practices, actions and omissions regarding the treatment of detainees with serious medical needs.

## SECOND CLAIM FOR RELIEF

### The Arkansas Civil Rights Act of 1993
### Ark. Code Ann. § 16-123-101, et seq.

63.     Plaintiff adopts and realleges each and every allegation contained in the preceding paragraphs, as if fully stated herein word-for-word.

64.     The foregoing facts constitute a violation of Babin's due process rights and right to be free from cruel and unusual punishment pursuant to Art. 2 §§ 7 and 8 of the Arkansas Constitution in violation of Ark. Code Ann. § 16-123-105.

65.     The foregoing acts constitute discrimination against Babin's known disability in violation of Ark. Code Ann. § 16-123-107.

## THIRD CLAIM FOR RELIEF

**Wrongful Death and Survival Actions
Action for Medical Injury
Ark. Code Ann. §§ 16-62-101 and 16-62-102
Ark. Code Ann. § 16-114-201, et seq.**

66.     Plaintiff adopts and realleges each and every allegation contained in the preceding paragraphs, as if fully stated herein word-for-word.

67.     BMRHC, from December 30, 2023 through January 6, 2024, was a medical care provider as contemplated by Ark. Code Ann. § 16-114-201, operating as a community health care center and mental health clinic pursuant to Ark. Code Ann. § 20-46-301. Dedek, Jones, Hollis, Hilton, Spark, Zappa, and John Does 11-15 are acting as medical care providers, individually and/or acting as employees and agents of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office.

68.     The Defendant Insurance Companies provided medical malpractice coverage for Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office, their agents and their employees on from December 30, 2023 through January 6, 2024, and are directly liable for the negligent acts of the Medical Care Defendants.

69.     The Medical Care Defendants and their agents and employees, individually and/or acting as employees and agents of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office held themselves out to the public as a medical care providers skilled in the care, treatment and evaluation of patients and

skilled in caring for people who are suffering from alcohol withdrawal and mental illness or who need medical attention or care and by reason thereof, BCDC contacted, contracted with and/or referred to the Medical Care Defendants, their agents and employees for the care and treatment of its pre-trial detainees and inmates.

70.     By virtue of said agreement, custom, practice and/or medical referral, the Medical Care Defendants, individually and/or acting as employees and agents of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office, did agree and undertake to carefully and skillfully attend Babin and to render proper mental status examination, psychiatric care and treatment to Babin from December 30, 2023 through January 6, 2024.

71.     The Medical Care Defendants, individually and/or acting as employees and agents of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office did not attempt to evaluate or diagnose Babin for his benefit.

72.     Between December 30, 2023, until the time of his death on January 6, 2024, Babin began to experience psychotic episodes and withdrawal symptoms that gradually became worse, resulting in a medical emergency on January 3, 2024. The medical professionals recommended to the Baxter County Sheriff's Office that they transport Babin to the BRMC for evaluation and treatment.

73.     While unattended without medication, hydration, medical support and observation, Babin became unresponsive while under the custody and control of the BCDC Defendants and while the medical care was being provided solely by the Medical Care Defendants.

74.     Babin's death was a medical injury.

75.     Babin's resulting injury and subsequent death were caused in part by the Medical Care Defendants, individually and/or acting as employees and agents of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office, through its agents and employees, as a direct and proximate result of the Medical Care Defendants' failure to exercise reasonable and ordinary care which a person would have expected the Medical Care Defendants to provide to any individual under like circumstances in the following ways among others:

    (a)    Failure to adequately evaluate and diagnose Babin's condition;

    (b)    Failure to obtain written standing or director orders or protocols for Babin from a physician or authorized medical professional;

    (c)    Failure to contact a duly licensed physician or other authorized medical professional to assume medical supervision of Babin's condition;

    (d)    Failure to establish a treatment plan for Babin;

    (e)    Failure to have Babin transferred to an acute care facility for detoxification;

    (b)    Failure to give proper attention to Babin when the BCDC Defendants and Medical Care Defendants knew or should have known that Babin was suffering from alcohol withdrawal; and was disoriented in the BCDC environment;

(c)    Failure to consider other appropriate alternatives to care for and protect an individual in Babin's condition;

(d)    Failure to exercise reasonable care to medically monitor and supervise Babin;

(e)    Failure to provide Babin with proper medication and medical attention;

(f)    Failure to treat Babin in a manner consistent with the applicable standard of care; and

(g)    Failure to establish and maintain effective intercommunication with a licensed physician or other authorized health professional to make a provision for the diagnosis and treatment of Babin's medical problems.

76.    The above actions constituted a breach of the standard of care for mental healthcare professionals of the degree of skill and learning ordinarily possessed by mental healthcare professionals in a similar locale.

77.    As a proximate and direct result of the carelessness, negligence and negligence per se of Medical Care Defendants, individually and/or acting as employees and agents of Baxter County, Arkansas, BCDC, the Baxter County Sheriff's Office and/or the Employed Healthcare Providers of Baxter County Sheriff's Office, Babin sustained injuries resulting in his death.

78.    The BCDC Defendants, to the extent covered by insurance, have waived sovereign immunity from a negligence cause of action.

79.    The BCDC Defendants' actions as set forth in paragraphs 1 through 78 constitute negligent and negligent per se acts that have proximately caused injury and death to Babin.

80.    The BCDC Defendants failed to act to protect Babin from bodily harm; failed to treat Babin for his psychosis and alcohol withdrawal; failed to implement policy and procedure regarding proper medical treatment for inmates and acted in a manner without the due care and diligence which a reasonable and prudent individual acting in a similar capacity would have displayed in assigning, housing and protecting the inmates in BCDC; and, failed to treat inmates suffering from alcohol withdrawal and psychosis.

81.    The Defendants' conduct in each of the foregoing respects constitutes assault, battery, negligence, gross negligence, and willful and wanton conduct, and the totality of its conduct evidences a malicious disregard for which malice may be inferred, rendering the Defendants liable for punitive damages.

82.    At the time of the incident in question, Babin was survived by his son Larry "Tripp" Charles Babin, III; daughter Isabelle M. Babin; and sister Danielle Krobert.

83.    As a direct and proximate result of the aforementioned negligence of the Defendants, Babin received both temporary and fatal injuries in BCDC and, as a consequence, his estate and statutory beneficiaries have sustained the following damages:

(a)    Conscious pain and suffering;

(b)    Disfigurement;

(c)    Mental anguish;

(d)    Medical and funeral expenses;

25

(e)     Property damages;

(f)     Loss of life;

(g)     Loss of past and future earnings;

(h)     Loss of earning capacity;

(i)     Funeral expenses; and

(j)     42 U.S.C. § 1988 statutory fees, Ark. Code Ann. § 16-123-105 statutory attorneys' fees and Ark. Code Ann. § 16-123-107 penalties and statutory attorneys' fees.

for all of which Plaintiff, as Special Administratrix of the Estate of Larry Charles Babin, Jr., claims damages in an amount which exceeds the amount necessary for federal diversity actions.

84.     As a direct and proximate result of the aforementioned negligence of Defendants, Babin's heirs, including his children and sister suffered mental anguish occasioned by the traumatic and needless unexpected death of their father and brother, all of which has damaged them in an amount which exceeds the amount necessary for federal diversity action.

85.     Plaintiff claims punitive damages against the Defendants in an amount sufficient to deter Defendants from similar conduct in the future.

86.     Plaintiff demands a trial by jury.

87.     Plaintiff reserves the right to amend this complaint.

WHEREFORE, Plaintiff respectfully prays that this Court enter an order granting a declaratory judgment that the Defendants' acts, policies, and practices complained of herein, violated Babin' rights secured by the due process clause of the

Fourth, Fifth and Fourteenth Amendments and the rights secured by the Eighth Amendment to the United States Constitution; joint and several nominal, compensatory, and punitive damages by a jury on the causes of action set forth above against all the Defendants for Plaintiff and the Estate of Larry Charles Babin, Jr.; a reasonable attorneys' 42 U.S.C. § 1988 fees; and all other just and proper relief, whether specifically prayed for herein or not.

Respectfully submitted,

Paul J. James (ABA No. 83091)
**JAMES & CARTER, PLC**
500 Broadway, Suite 400
Little Rock, Arkansas 72203
(501) 372-1414 – Telephone
(501) 372-1659 – Facsimile
pjj@jamescarterlaw.com

***Attorney for Plaintiff***